CARLTON, Justice.
By certiorari petition presented pursuant to Article V, § 4(2), Florida Constitution, F.S.A., we have for review two orders[1] entered by the Public Service Commission which adversely disposed of petitioner’s contentions that: (1) the Commission had no statutory authority to regulate petitioner’s proposed stationary microwave communications service; (2) in the alternative, all proposed services were to be regulated only under Part II, Chapter 364, Florida Statutes, F.S.A. We find these Orders to be without error.
In September 1969 petitioner Microcom, Inc., filed with respondent Florida Public Service Commission an application for a certificate of public convenience and necessity to permit petitioner to operate a statewide radio common carrier system. The application was submitted under purported authority of Part II of Chapter 364, Florida Statutes, F.S.A., generally, with specific *130 attention being given to Fla.Stat. §§ 364.41, 364.42 and 364.43, F.S.A. In December 1969 Microcom amended the application so as to request authority to provide not only wide-area radio communication services, but also what it described as “point-to-point microwave miscellaneous common carrier services”; additionally, the amendment sought approval for any and all other communication services or other services which may be provided by a miscellaneous common carrier as permitted or to be permitted by law.
Simultaneously, Microcom filed in December 1969 a motion to dismiss a portion of its amended application on jurisdiction grounds, the portion was that concerned with “point-to-point microwave miscellaneous common carrier services.” The motion was based upon the premise that the Commission is without authority to regulate services save as such authority is granted by the Legislature. Microcom contended that in line with this premise, this Court ruled through Radio Telephone Communications, Inc. v. Southeastern Telephone Company, 170 So.2d 577 (Fla. 1965), that a radio communications service was not a telephone company as contemplated in regulatory statute Fla.Stat. § 364.02 (1965), F.S.A., and that accordingly the Commission was without authority to regulate radio communications service under that statute. Immediately thereafter, the Legislature enacted what was styled as Part II of Chapter 364 in an effort to place radio communication under the regulatory authority of the Commission. Under Fla.Stat. § 364.41(2) (c), F.S.A. of Part II, a radio common carrier was defined as' a company in the business of “[Providing a service of radio communications between mobile and base stations, between mobile and land stations, or between mobile stations * * * but not engaged in the business of providing a public land line message telephone service or a public message telegraph service.”
Microcom argued in its motion to dismiss that the microwave service it sought to provide was to be based upon wholly stationary facilities for transmission and reception, and that no mobile units were to be involved. Since the statutory definition of the kind of radio common carrier to be regulated under Part II stressed the use of mobile units (“[Bjetween mobile and base stations, between mobile and land stations, or between mobile stations * * *”), and since no mobile units would be used, Mi-crocom contended that the Commission was without statutory authority to regulate its proposed stationary microwave “point-to-point” service.
Following oral argument on this jurisdictional issue, which included presentations by several telephone companies appearing by invitation of Microcom as in-tervenors, the Commission issued Order No. 4845 holding, “[Tjhat the communications service which applicant proposes to offer to the public for hire is subject to the jurisdiction of this Commission * * and denying the motion to dismiss. The Commission did not discuss its rationale for denying the motion, but the basis for its ruling becomes apparent when its second Order is reviewed.
The second Order, No. 4881, was issued by the Commission after consideration of several motions filed by various intervening telephone companies, all seeking a dismissal of the'amended application submitted by Microcom. In its Order, the Commission summarized the thrust of these motions:
“1. That the Amended Application affirmatively shows that it was filed under Part II; and as a result, the authority requested must be confined to a certificate grantable under Part II, and Not under Part I of Chapter 364. Neither the ‘wide-area radio communications service,’ which would employ microwave to interconnect radio common carriers in this State, nor the ‘point-to-point microwave miscellaneous common carrier services,’ both as contemplated by the Amended Application, fall within the *131 definition of the certificate to be issued under Part II. Thus, the Commission is without authority to grant the certificate sought.
“2. That the ‘wide-area radio communications service,’ and the ‘point-to-point microwave miscellaneous common carrier services’ as outlined in the Amended Application, are services coming solely within the definition of a, telephone „op,-eration under Part I of Chapter 364. Thus, the Commission is without authority to grant the requested certificate under Part II of Chapter 364.”
The Commission then went on to discuss its impression of the controlling legal principles involved in resolving the status of the amended application. Because the Commission’s discussion succinctly reflects the view taken by this Court after review of pertinent cases and statutory matter, we have set it out in full:
“In Section 152(b) and Section 221(b) of Title 47, USCA, the Congress of the United States has recognized state jurisdiction over intrastate telephone communication services. Therefore, we must look to Chapter 364, Florida Statutes [F.S.A.], as the key statutory enactment of the State of Florida involved in the resolution of the issues presently before this Commission. To understand the scope and meaning of said Chapter 364, it is appropriate to review briefly several recent developments with respect to said law.
“Initially, Chapter 364 dealt solely with the regulation of telegraph and telephone companies. In 1953, the Legislature authorized the granting of a certificate of public convenience and necessity tó a telephone company and required a certificate for such an operation in this State (See Section 364.33-364.40, Florida Statutes [F.S.A.]).
“Approximately ten years later a case arose involving a mobile radio communications service and its interconnection with the exchange facilities of a certificated telephone company. This case ultimately was reviewed by the Supreme Court of Florida under the style of Radio Telephone Communications, Inc. v. Southeastern Telephone Company, (1964) 170 So.2d 577. In its opinion, the Court rejected the contention of RTC that the regulation of radio communication, including that involved in this case, had been pre-empted by the Federal government so that these radio services are not subject to state regulation and control. Referring to Title 47, Section 221(b), USCA, the Court held that these communication services are essentially intrastate in nature, and that it was the Congressional intent to reserve to the several states the right to regulate such intrastate services. In other words, the State of Florida could pre-empt this field. However, the Court pointed out that the definition of a telephone company in Section 364.02 did not mention the rendition of service by radio. It, thereupon, concluded that a radio communications service was not a telephone company over which this Commission had jurisdiction, notwithstanding the interconnection of its radio services with a regulated utility’s telephone line.
“The Legislature of this State changed this situation by passing Chapter 65-451 in its 1965 Session. The term ‘telephone line’ in Section 364.02 was amended to include ‘radio and other advancements of the art of telephony,’ thereby making it clear that the rendition of intrastate telephone service by radio came within the scope of the operations of a telephone company. Thus, the State has pre-empt-ed the field and has given this Commission unquestioned jurisdiction of this area. However, by this amendment, the Legislature apparently realized that it had placed radio mobile telephone services solely within the certificate of a telephone company. Therefore, the right of a number of mobile telephone operators to continue to render service and to *132 interconnect with telephone companies was placed in jeopardy. To avoid this result, Part II was added to Chapter 364 to include radio common carriers and to require the granting of a certificate to such carriers. At the same time, the Legislature was careful to avoid any misinterpretation of Part II and the scope thereof. First, it defined a ‘radio common carrier’ as one ‘engaged in the business of providing a service of radio communications between mobile and base stations, between mobile and land stations or between mobile stations under license as a miscellaneous common carrier from the Federal Communications Commission.’ It went on with this definition to state, and in the next subsection to reiterate, that the term ‘radio common carrier’ shall not be construed to mean a ‘telephone company’ under Part I, nor to have the ‘powers, rights or duties’ of a ‘telephone company.’ The fact that both of these amendments were made in the same Act makes the legislative intent abundantly clear.”
Ultimately, the Commission ruled that Microcom’s amended application should be dismissed as suggested by the in-tervenors. We agree. The amended application was drafted with regard to Part II, and was filed purportedly under Part II of Chapter 364. Since it sought authority reserved solely for operations confined to mobile unit services of a specifically defined nature, it was properly subject to dismissal. The proper course of action available to Microcom would be to apply for the authority it seeks under Part I of the chapter. We are given to understand that Microcom has already done this. Presumably, action on the application is being withheld pending our disposition of this cause.
The Commission’s jurisdiction over Microcom under Part I of Chapter 364 was established by the amendment of Fla. Stat. § 364.02, F.S.A. so as to include “radio and other advancements of the art of telephony” following our decision in Radio Telephone Communications, Inc. v. Southeastern Telephone Company, supra. These words obviously signal a legislative intent to include under the Commission’s authority those scientific innovations within the realm of wireless communications which are applied to provide service to the public. Microwave communication clearly falls within this classification.
The Orders herein reviewed being free from error, the petition for certiorari review is hereby discharged.
It is so ordered.
ERVIN, C. J., DREW and ADKINS, J]., and SPECTOR, District Court Judge, concur.

. Order No. 4845, dated March 9, 1970; final Order No. 4881, dated May 5, 1970.